■ CASEY RYAN, Appellant, v TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK, INC., Respondent-Appellant, PERIMETER BRIDGE AND SCAFFOLD CO., INC., Respondent, and F.J. SCIAME CONSTRUCTION CO., INC., Appellant-Respondent, et al., Defendant. [947 NYS2d 85]—

Order, Supreme Court, New York County (Eileen A. Rakower, J.), entered March 3, 2011, which, to the extent appealed from denied defendant F.J. Sciame Construction Co., Inc.'s (Sciame) motion for summary judgment dismissing the complaint as asserted against it, and denied defendant Trustees of Columbia University in the City of New York's (Columbia) motion for summary judgment dismissing the complaint as asserted against it, unanimously affirmed, without costs. Judgment, same court and Justice, entered July 8, 2011, dismissing the complaint as against Perimeter Bridge and Scaffold Co., Inc. (Perimeter), and bringing up for review an order, same court and Justice, entered March 3, 2011, which granted Perimeter's motion for summary judgment dismissing the complaint as against it, unanimously reversed, on the law, without costs, the judgment vacated, and the complaint reinstated as against Perimeter. Appeals from or-

der, same court and Justice, entered March 3, 2011, which granted Perimeter's motion for summary judgment dismissing the complaint as asserted against it, unanimously dismissed, without costs, as subsumed in the appeals from the judgment.

Plaintiff was injured when a sidewalk bridge collapsed and material from the roof of the bridge fell on her. Perimeter erected the bridge for a project that nonparty B&A Restoration Contractors (B&A) performed for Columbia, pursuant to an agreement between B&A and Perimeter. Meanwhile, Columbia retained defendant Sciame as a construction manager for an unrelated project and, near the conclusion of B&As project, entered into an agreement with Perimeter for the rental of the bridge for use in the Sciame project. Sciame was not a party to the agreement, and there was no line item concerning construction of a sidewalk bridge in the Construction Management Agreement between Sciame and Columbia.

The court properly denied Sciame's motion for summary judgment dismissing the complaint. Sciame argues that it had no duty, contractual or otherwise, related to the sidewalk bridge, and thus owed no duty of care to plaintiff. However, the broad language of the Construction Management Agreement and Site Safety Plan governing Sciame's obligations demonstrates that Sciame had overall responsibility to maintain safety at the work site (*see Church v Callanan Indus.*, 99 NY2d 104, 112-114 [2002]; *Palka v Servicemaster Mgt. Servs. Corp.*, 83 NY2d 579 [1994]; *Piccirillo v Beltrone-Turner*, 284 AD2d 854, 856 [2001]). Further, issues of fact exist as to whether the sidewalk bridge fell within the scope of Sciame's work and, thus, whether Sciame had a duty to inspect the bridge.

The court also properly denied Columbia's motion for summary judgment dismissing the complaint. As a landowner, Columbia owed a nondelegable duty of reasonable care to pedestrians (*see Tytell v Battery Beer Distrib.*, 202 AD2d 226 [1994]; *Tipaldi v Riverside Mem. Chapel, Inc.*, 273 App Div 414, 417 [1948], *affd* 298 NY 686 [1948]). An issue of fact exists as to whether Columbia adequately inspected the bridge, and whether further inspections would have revealed a defective condition.

Although plaintiff argues that she is entitled to summary judgment against Columbia, she did not file a notice appealing from the order denying her motion for summary judgment. In any event, given the existence of triable issues of fact, and the fact that the sidewalk bridge collapsed in windy conditions, the court properly denied her motion for summary judgment (*see Tora v GVP AG*, 31 AD3d 341, 343 [2006]; *Dickert v City of New York*, 268 AD2d 343 [2000]).

However, the court erroneously granted Perimeter summary judgment dismissing the complaint. Despite Perimeter's vice-president's testimony that Perimeter inspected its sidewalk bridge components before erecting the bridges, and that the used wood components are "structurally sound" and "good, usable wood," its employees stated that the wood used in assembling the scaffolding was stored where it was exposed to the elements. After the accident, Columbia's project manager observed rotted wood at the location of the collapse and directed Perimeter to replace it with new lumber.

Additionally, plaintiff's expert, a certified site safety manager, stated that photographs of the damaged structure show wood that "was extremely discolored, old, degraded, poor quality, warped, cracked, split at the nails, deteriorated, weakened, and structurally unsound." She further concluded that the lumber used "was not fastened at the various joints with sufficient nails or bolts of a suitable size to produce a secure joint capable of withstanding the design load and that said scaffold was not of sufficient strength and quality as required."

Moreover, at the time Columbia entered into a contract with Perimeter to rent the existing sidewalk bridge for an initial period of 16 months, it is uncontested that no inspection of the completed sidewalk shed was ever made. Notably, at this point in time, the scaffolding had been erected more than year prior and Perimeter performed no inspections prior to entering into the lease with Columbia. Given the lack of inspection of the sidewalk bridge at any time after it was erected, there is no evidence to support Perimeter's contention that the structure was sound when erected or when the new lease was entered into with Columbia. Because the agreement with Columbia was a new scaffolding lease, Perimeter was obligated to inspect and make sure that the sidewalk bridge was structurally sound before placing it into the stream of commerce. The failure by Perimeter to inspect the scaffold places the issue of the integrity of the structure at the time of the lease with Columbia in question (see *Winckel v Atlantic Rentals & Sales*, 159 AD2d 124, 127 [1990]).

We have stated that "[t]he proponent of summary judgment must establish its defense or cause of action sufficiently to warrant a court's directing judgment in its favor as a matter of law" (*O'Halloran v City of New York*, 78 AD3d 536, 537 [2010]). Thus, the movant bears the burden to dispel any question of fact that would preclude summary judgment (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). The photographic and testimonial evidence of rotted wood indicates

deterioration that occurred over a period of time (*see e.g. McKee v State of New York*, 75 AD3d 893, 895-896 [2010]; *Banks v Odd Job Trading Corp.*, 299 AD2d 248 [2002]). The testimony that Perimeter stored wood scaffolding parts in the open and exposed to the elements, coupled with the expert's opinion that the substandard wooden components rendered the sidewalk bridge structurally unsound, presents a question of fact concerning the safety of the scaffolding that requires resolution at trial.

We have reviewed the parties' remaining contentions and find them unavailing. Concur—Tom, J.P., Sweeny, DeGrasse, Abdus-Salaam and Manzanet-Daniels, JJ.